THE STATE OF OHIO, APPELLEE, *v.* THOMPSON ET AL.,
APPELLANTS.

[Cite as State v. Thompson (1977), 55 Ohio App. 2d 17.]

(No. 4554—Decided August 24, 1977.)

*Mr. James R. Unger,* prosecuting attorney and *Mr. Dale T. Evans,* for appellee.

*Mr. Tom Borcoman, Mr. Joseph W. Calabretta* and *Mr. Ralph W. Ross,* for appellants.

HUNSICKER, J. On March 31, 1976, an indictment was filed in the Common Pleas Court charging Gary Everett Thompson and Myron Lester Tilton, along with two other men, with three counts of aggravated murder with specifications of aggravated circumstances, and three counts of complicity in the commission of aggravated murder with a specification of an aggravated circumstance.

In due course, Thompson and Tilton were arraigned, entered pleas of not guilty and, defendants being unable to employ counsel, the trial court appointed attorneys for both. At the request of each defendant, attorney Harry Schmuck and attorney Tom Borcoman of the Public Defender's Office were appointed as counsel for Thompson and Tilton.

Thompson and Tilton signed waivers of a jury trial and thereby expressed a desire to be tried to three Common Pleas Court judges. A trial was had and on July 6, 1976, Thompson and Tilton were each found guilty by a unanimous judgment of the trial judges of three counts of aggravated murder and the trial judges unanimously found Thompson and Tilton each guilty of committing the offenses while committing aggravated arson.

Psychiatric examinations of Thompson and Tilton were conducted under provisions of R. C. 2929.03 and R. C. 2947.06.

On October 19, 1976, motions for a new trial filed by both Thompson and Tilton were overruled. Sentence was then imposed. Thompson and Tilton were each sentenced to the Southern Ohio Correctional Institution in Lucasville, Ohio, for the remainder of their natural life on each of the three counts of aggravated murder.

A notice of appeal to this court was filed November 9, 1976.

As the trials were held jointly, so too the appeals were argued jointly. The appellants filed six assignments of error as follows:

"1. The trial court erred in finding aggravated murder was supported by the evidence, due to complete failure of the evidence to show a purposeful causing of death.

"2. The trial court erred in overruling defendants-appellants' motion for a new trial based upon newly discovered evidence for reason that said evidence was such that it placed a duty upon the trial court to grant a new trial and its failure to do so was an abuse of discretion.

"3. The defendants-appellants' right to cross-examine and confrontation was effectively denied.

"4. The defendants-appellants state that their rights under the Sixth Amendment and the Fourteenth Amendment to the United States Constitution were violated wherein they were deprived of the effective assistance of counsel during the trial of this matter, in that chief counsel, appointed by the Common Pleas Court of Stark County, Ohio, had a conflict of interest in that said chief counsel represented state's witness George Bevington, prior to the trial, during the trial, and after the trial, all in violation of the defendants-appellants' rights.

"5. The trial court erred in not allowing the defendants-appellants the opportunity to testify under oath during a hearing on the motion for a new trial based upon newly discovered evidence.

"6. The judgment of the three-judge panel is against the manifest weight of the evidence and contrary to law."

On the evening of Sunday, November 30, 1976, the LaCuisina restaurant on Lincoln Way East, Massillon, Ohio, was destroyed by fire and explosion. Investigation by the authorities resulted in the indictment above mentioned which was also against Louis Battista, the owner of LaCuisina and Joseph Paone, who assisted Battista in the management of the business.

One Fred Delesandro testified that, by plea bargaining for a five year arson guilty plea, he agreed to tell the manner in which the restaurant was detroyed. Fred Delesandro, an admitted arsonist and a man with criminal record, stated the following:

Six months before the burning of the LaCuisina the defendant-appellant, Tilton, wanted to see him at the SouthGate shopping center about a missing brother of Tilton; Mike Scott, a friend, rode with Delesandro to SouthGate where they met appellant Tilton (herein called Tilton) and Gary Thompson. At that place and time a discussion began about the burning of a restaurant and the price that would be paid for the burning. Delesandro said he would have to examine the location. After he had the inspection completed, Delesandro said he and defendant appellant, Thompson (called Thompson herein) who also

went by the alias of Stewart, purchased 210 plastic five gallon containers on the eastside of Cleveland, Ohio.

Delesandro bought gasoline to fill 90 of the plastic containers which were used to blow up and burn the restaurant. George Bevington, an independent contractor for excavations and septic tank work, helped Delesandro purchase the gasoline. Bevington said Delesandro owned a farm and did construction work so he did not inquire as to the need for the gasoline. Delesandro said he, Thompson and Tilton went to the LaCuisina on Sunday afternoon, November 30, 1975. Thompson brought all of the gasoline to the restaurant building in a panel truck and Tilton drove Delesandro in Tilton's automobile to the place. They entered and first shut off motors and pilot lights, placed the plastic containers in stategic places inside the building, made fuse or trailers of strips of shredded paper then punched holes in the plastic containers with an ice pick. Thompson went out of the place to start their "get away" automobile. Delesandro was to set the paper trailers or fuse on fire. He had sent Tilton out of the building to get in the "get away" automobile which Thompson had started. Delesandro did not light the paper trailers for an explosion occurred in the basement. Delesandro believed this was a gasoline explosion caused by sparks from a large electric motor which they had not shut off. Delesandro hurried from the building, and got in the automobile with Thompson and Tilton. Thompson drove east a few city blocks then turned, so as to circle the streets to come toward the LaCuisina restaurant from the west. They saw that the fire department was coming to the fire.

Delesandro, Thompson and Tilton after watching the burning building and seeing the firemen in and about the structure, left the scene. Before Delesandro, Thompson and Tilton left the building they took some chairs, silverware, tablecloths, napkins and other articles. Some of the articles were later recovered in a ditch or strip mine excavation in Tuscarawas County, south of Canton, along with some plastic pieces of containers that Delesandro said Thompson cut up and threw on the side of the road. Many

of these articles and pieces of plastic were recovered and used as exhibits at the trial.

The investigation by the authorities which revealed the purchase of gasoline, the purchase of plastic containers by two men, Delesandro and Stewart (the alias Delesandro said Thompson used) and the further fact that one of the neighbors of the restaurant saw a panel truck and automobile at the LaCuisina on Sunday, November 30, being the Sunday after Thanksgiving Day (the restaurant was closed on Sundays) helped fix, in the minds of the jurors the testimony of Delesandro. An F. B. I. agent testified that he saw a man and Thompson with Delesandro and Mike Scott on the day Delesandro said the parties discussed the arson job. This further substantiated the fact to be that the story told by Delesandro was the truth.

The evidence is overwhelming that Thompson and Tilton, along with Delesandro, planned and executed the destruction of the LaCuisina restaurant on Sunday, November 30, 1975. The finding by the judicial panel of that fact is not against the manifest weight of the evidence. We shall come to the question of the judgment in the order set out in the brief of the appellants.

The chief question in this case concerns the meaning and intent of the word "purpose" as used in R. C. 2903.-01(B), which states in part:

"No person shall purposely cause the death of another while committing * * * aggravated arson or arson, * * *"

The case most often cited in the situation we have here is *Turk* v. *State* (1934) 48 Ohio App. 489, which, on appeal, was affirmed when only six judges of the Supreme Court of Ohio considered the case. In reaching a decision, three justices voted to affirm the judgment of the Court of Appeals and three voted to reverse the judgment of the Court of Appeals and affirm the judgment of the Court of Common Pleas.

Because of the state of the *Turk* case, it behooves us to examine this case to determine if, on the facts these defendants can be said to have intended the natural and

probable consequences of their unlawful act. When the fire was set at the LaCuisina restaurant did the defendants intend the result?

Given the danger that existed from such a large quantity of highly explosive material, was not there a great likelihood of a fireman fighting the fire being severely injured or killed?

Are the deaths in this case so remote, as was said in the *Turk* case, that such deaths could not be a natural and probable consequence of the act of arson? How do you show purpose such as we have here, for it is a rare call indeed for a defendant to step forward and say I intended to kill? Purpose certainly is shown by the acts, conduct and the knowledge exhibited in carrying out whatever is done by the person.

As was quoted in *State* v. *Fugate* (1973), 36 Ohio App. 2d 131 at 132, where the court quotes with approval the determination of other courts in saying:

"[quoting State v. Huffman, 131 Ohio St. 271]: 'The intent of an accused person dwells in his mind. Not being ascertainable by the exercise of any or all of the senses, it can never be proved by the direct testimony of a third person and it need not be.'

" 'It is the law of Ohio that an intent to kill may be presumed where the natural and probable consequence of a wrongful act is to produce death, and such intent may be deduced from all the surrounding circumstances, including the instrument used to produce death, and the manner of inflicting a fatal wound.' * * *'"

These defendants, Thompson and Tilton, were direct participants in all of the action taken to destroy the LaCuisina restaurant. They placed or helped place the explosive material at strategic locations in the building, but knowing the danger to their own lives they extinguished all possible sources of ignition. These defendants hastened from the building and the vicinity not only from fear of detection but also for their lives. Knowing that the firemen would approach in close proximity to the building to prevent a spread of the fire, these defendants re-

turned to a point near the restaurant. From the west side of the building these appellants saw firemen in that location. It was the west wall that, as a result of the explosion, fell on the firemen and caused their death. Knowing all these factors and resting secure in the knowledge that the large quantity of gasoline would explode, appellants made no effort to warn anyone of the danger but hastened away from the scene of the fire.

Under the facts of this case, the natural and probable consequence of the conscious acts of Thompson and Tilton was the death or very serious injury of the firemen. Delesandro, Thompson and Tilton were not interested in the firemen but only in the total destruction by fire of the LaCuisina restaurant, regardless of the consequences.

While the act of burning the structure alone may not be sufficient to infer intent, when combined with the appellants' knowledge that others were actually exposed to the great danger they created, the element could be presumed from the natural and probable consequences of their acts. Their deliberate actions went beyond mere recklessness. The requirements of the statute have been fulfilled for these appellants, Thompson and Tilton, by their course of conduct, intended the consequences of their action.

The trial judges were justified in finding the purpose to cause the death of another as required by R. C. 2903.-01(B).

A discussion of homicide resulting from arson may be found in Annotation 87 A. L. R. 414, Annotation 50 A. L. R. 3d 411 and 40 American Jurisprudence 2d 371, Homicide, Section 79, note 11. The statute in Ohio is very different from those found in other states that have felony murder statutes.

We reject assignment of error number one.

There was testimony by Delesandro that at the meeting at SouthGate the question of James Tilton's disappearance was inquired into. That does not automatically absolve Myron Tilton. A new trial is granted only for good cause. The matters discussed in appellants' assignment of error number two do not justify a trial court ordering a

new trial to take place. There is no abuse of discretion shown within the rule set out in the second paragraph of the syllabus of *State* v. *Williams* (1975), 43 Ohio St. 2d 88. We have here a collateral matter not involved in the main issue.

We reject assignment of error number two.

Delesandro responded to all but one question regarding his criminal conduct over a period of years. That one instance occurred only when the presiding trial judge reminded Delesandro, as he should have, of his rights under the Fifth Amendment. The long list of convictions and participation in criminal activities did not deter the judges from believing Delesandro in the instant case as they had a right to believe him. The presiding trial judge's actions to preserve a record free from error is not a matter about which Thompson and Tilton should complain. Their counsel did a good job in unfolding the pages of Delesandro's past.

We reject assignment of error number three.

The claim of conflict of interest is raised herein because a witness, George Bevington, both purchased for and sold gasoline to Delesandro, which Delesandro later used in the arson scheme. This witness was a longtime friend of and client of Mr. Schmuck who, along with Mr. Borcoman, represented the defendants. Since *Glasser* v. *United States* (1942), 315 U. S. 60, there have been many cases which claim ineffective counsel as the reason a new trial should be granted a convicted defendant. Mr. Schmuck said he informed his clients of his connection with Mr. Bevington. No relationship between Bevington and the appellants was ever established. Bevington was not implicated in any crime arising out of the burning of the restaurant. The appellants' contention that Mr. Schmuck was attempting to protect the interests of Bevington as well as their own is not well taken. His role in the prosecution was minimal, relating only to the purchase of gasoline by Delesandro alone. Thus, while the propriety of Mr. Schmuck's conduct is questionable, there existed no conflict of interest that would render Mr. Schmuck inef-

fective as an advocate of the appellants' rights. The fact that he had represented the witness in the past does not *per se* create a conflict. Neither present counsel on appeal nor co-counsel at the trial have pointed to any portion of the record indicating a failure to protect the rights of the accused. In *State* v. *Hester* (1976), 45 Ohio St. 2d 71, paragraph 4 of the syllabus states:

"The test in determining if the accused had effective retained counsel is whether the accused, under all the circumstances, including the fact that he had retained counsel, had a fair trial and substantial justice was done."

After our reading of the transcript of proceedings, examining the transcript of the docket and journal entries and the other papers in this case, we must conclude that the requirements of *State* v. *Hester, supra,* have been met. We believe the tests set out in *Beasley* v. *United States* (C. A. 6, 1974), 491 F. 2d 687, have also been complied with.

We reject assignment of error number four.

Thompson and Tilton complain that they were not permitted to give oral testimony at a hearing on the motions for a new trial.

Contrary to what counsel asserts, the presiding judge of the trial court, when counsel asked his client Thompson to take the witness stand, said:

"Won't be necessary, we have his affidavit also. Unless you're telling me they are going to say something different than what they have already said."

The counsel, who was pressing the matter of oral testimony on the motion for a new trial, never answered that question but said:

"Let the record state this court, in its opinion, is depriving these defendants the right to fully brief this court the rights under the law."

Criminal Rule 33 sets out the grounds for a new trial, which is by motion. Crim. R. 57(B) provides for procedure not otherwise specified and Crim. R. 47 states, in part:

"To expedite its business, the court may make provision by rule or order for the submission and determination of motions without oral hearing upon brief written

statements of reasons in support and opposition.''

The trial judges violated no rules of criminal procedure. From the facts provided, the court did not deny the appellants the right to testify, but merely stated that the testimony given must be something other than what was already provided to the court by way of affidavits. The appellants were not denied the opportunity to testify. They were merely denied the opportunity to repeat orally testimony already possessed by the court. Since no prejudice resulted from the denial, there is no merit whatsoever in this assignment of error.

We reject assignment of error number five.

At the beginning of this opinion, we set out in considerable detail the facts of this case. From those facts as detailed in the record and the testimony before us, we conclude that the judgment is not against the manifest weight of the evidence. See, *State* v. *Flonnory* (1972), 31 Ohio St. 2d 124.

It is clear that sufficient evidence was presented at the trial to support the appellants' conviction. What the appellants are contesting in this assignment of error is the credibility of Delesandro as a witness. Since the issue of credibility is a question of fact to be decided by the triers of fact, the Court of Appeals cannot substitute its judgment for that reached by the trial court. *Trickey* v. *Trickey* (1952), 158 Ohio St. 9; *In re Tilton* (1954), 161 Ohio St. 571.

We reject assignment of error number six.

The judgment of the trial court as to each defendant is affirmed.

*Judgment affirmed.*

CORRIGAN, P. J., and VICTOR, J., concur.

CORRIGAN, J., of the Eighth Appellate District, and VICTOR, J., of the Ninth Appellate District, sitting by designation in the Fifth Appellate District. HUNSICKER, J., retired, of the Ninth Appellate District, was assigned to active duty in the Fifth Appellate District under authority of Section 6(C), Article IV, Constitution.